1    JEFFER, MANGELS, BUTLER & MARMARO LLP
     ROD S. BERMAN (Bar No. 105444)
2    *rberman@jmbm.com*
     SUSAN ALLISON (Bar No. 133448)
3    *sallison@jmbm.com*
     JESSICA C. BROMALL (Bar No. 235017)
4    *jbromall@jmbm.com*
     1900 Avenue of the Stars, Seventh Floor
5    Los Angeles, California  90067-4308
     Telephone:   (310) 203-8080
6    Facsimile:   (310) 203-0567

7    Attorneys for Defendants and Counterclaimants:
     CELS ENTERPRISES, INC. and ROBERT GOLDMAN

8

9                UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11   ROCK AND ROLL RELIGION, INC., a California corporation, | CASE NO.   CV09-5258 R (PLAx) |
| 12          Plaintiff/Counter-defendant, | **CELS ENTERPRISES, INC.'S AND ROBERT GOLDMAN'S** |
| 13        v. | **OPPOSITION TO COUNTERDEFENDANTS ROCK** |
| 14   CELS ENTERPRISES, INC. a New York corporation; ROBERT | **AND ROLL RELIGION, INC.'S AND DEFIANCE USA, INC.'S MOTION** |
| 15   GOLDMAN, an individual | **TO DISMISS PLAINTIFF'S THIRD AMENDED COUNTERCLAIM** |
| 16       Defendants/Counterclaimants | |
| 17   CELS ENTERPRISES, INC., a New | |
| 18   York corporation; ROBERT GOLDMAN, an individual, | Hearing Date:  January 4, 2010 |
| 19         Counterclaimants, | Time:                10:00 a.m. Place:               Courtroom 8 |
| 20       v. | [Objection to Request for Judicial Notice filed concurrently] |
| 21   ROCK AND ROLL RELIGION, INC., a | |
| 22   California corporation; DEFIANCE USA, INC., a California corporation; and | |
| 23   DOES 1 through 10 inclusive, | |
| 24        Counterdefendants. | |

25        Defendants Cels Enterprises, Inc. ("Cels") and Robert Goldman ("Goldman")

26 (collectively, "Counterclaimants"), hereby submit their Opposition to the Motion to

27 Dismiss Third Amended Counterclaim (the "Motion") filed by counterdefendants

28 Rock and Roll Religion, Inc. ("Rock and Roll") and Defiance USA, Inc. ("Defiance")

(collectively, "Counterdefendants").

## I.    **INTRODUCTION**

Counterdefendants seek dismissal of Counterclaimants' Third Amended Counterclaim ("TAC") on the grounds that Counterclaimants fail to allege facts sufficient to state a "plausible" claim for relief.

Counterclaimants' TAC, however, is fully supported with specific factual allegations and is more than adequate to state a claim for relief.  Specifically, Counterclaimants have alleged, among other things, that:

- both parties use LAUNDRY as a central part of their mark, TAC, ¶ 26;
- both parties sell belts and women's denim, TAC, ¶ 25(a);
- both parties' goods are of the kind often sold by a single source, namely, scarves, hats, bags, shoes, legwear, sunglasses, and ties, TAC, ¶ 25(b);
- both parties' goods are both sold in Von Maur and Dillard's department stores, TAC, ¶ 25(c);
- both parties' goods are sold through the exact same websites, including, *inter alia*, www.overstock.com and www.amazon.com), TAC, ¶ 25(d);
- both parties' goods have been featured *OK* and *In Touch* magazines, TAC, ¶ 27(d).

Counterdefendants either ignore Counterclaimants' actual factual allegations or mischaracterize them as "conclusory."  It appears that Counterdefendants may misapprehend the meaning of "conclusory" in this pleading context.  Contrary to Counterdefendants' assertion, Counterclaimants allegations are not rendered "conclusory" simply because they are not, at the pleading stage, supported by evidence.  Counterclaimants' allegations are more than sufficient to make clear that likelihood of confusion is more than plausible.

Counterdefendants also attempt to overcome Counterclaimants' well-pleaded allegations by improperly introducing and relying on more than 600 pages of documentary "evidence."  It is axiomatic that motions to dismiss are evaluated with reference only to matters appearing in the pleadings. "While the rules allow a court to

1   take judicial notice at any stage of the proceedings, . . . it should be done *sparingly* at

2   the pleadings stage." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007).

3          Further, it is well settled that the factual issues raised by allegations in a

4   pleading are not properly resolved on a motion to dismiss.  To resolve "thorny issues"

5   like likelihood of confusion at the pleading stage by resorting to voluminous

6   "evidence" submitted by a single party is too "far afield from the adversarial context

7   of litigation." *Id.* at 236-37.

8          For these reasons, and as more fully explained below, Counterdefendants'

9   Motion is without merit and should be denied.[1]

10  **II.    STANDARDS FOR MOTIONS TO DISMISS**

11         **A.    No "Heightened" Pleading Standard**

12         Contrary to the picture painted by Counterdefendants, recent Supreme Court

13  cases have not created a new and "heightened" federal pleading standard.  Rather, it

14  remains the law of the land that a claimant is not required to plead "detailed factual

15  allegations" in order to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 129 S.Ct.

16  1937, 1940, 173 L.Ed. 2d 868 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S.

17  544, 555, 127 S. Ct. 1955, 1966 (2007).

18         Indeed, the Supreme Court in *Twombly* specifically stated that "a well-pleaded

19  complaint may proceed even if it strikes a savvy judge that actual proof of those facts

20  is improbable, and 'that a recovery is very remote and unlikely.' "  *Twombly*, 550 U.S.

21  at 556, *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90

22  (1974).

23         After *Twombly* and *Iqbal*, the law still requires that in evaluating the TAC, the

24  Court must assume all well-pleaded allegations to be true and must construe those

25  allegations in the light most favorable to Counterclaimants.  *Twombly*, 550 U.S. at

26  _____

27         [1] If, however, the Court finds Counterdefendants' Motion persuasive,
    Counterclaimants respectfully request that they be given leave to file a fourth
28  amended counterclaim to cure any defects identified by the Court.

1    556.  Moreover, to survive a motion to dismiss, such allegations need only "allow[]

2    the [C]ourt to draw the reasonable inference that the defendant is liable for the

3    misconduct alleged."  *Iqbal*, 129 S.Ct. at 1940, *citing Twombly*, 550 U.S. at 555.

4         **B.**    **Conclusory Allegations v. Allegations of Fact**

5         The Court is not required to accept as true conclusory allegations or legal

6    conclusions unsupported by allegations of supporting facts, *e.g.* a bare allegation that

7    likelihood of confusion or secondary meaning exists.  *Id.*  Where as here, however,

8    legal conclusions merely provide the "framework" of the claim, and where each such

9    legal conclusion is supported by specific factual allegations, the allegations must be

10   assumed to be true.  *Id.* at 1940-41.

11        Additionally, Counterdefendants excoriate Counterclaimants for failing to

12   support their allegations with evidence.  Counterdefendants misunderstand the nature

13   of a motion to dismiss.  At the pleading stage, Counterclaimants are absolutely not

14   required to produce evidence in support of their factual allegations, nor does the lack

15   of such supporting evidence render specific factual allegations "conclusory."  In fact,

16   the failure to provide such evidence cannot provide a basis for dismissal.  *Schmidt v.*

17   *Contra Costa County*, 310 Fed. Appx. 110 (9th Cir. 2009) ("A Rule (12)(b)(6)

18   dismissal cannot be based on a failure to produce evidence.")

19        **C.**    **Motions to Dismiss Limited to the Pleadings and are Not the Proper**

20                **Vehicle to Resolve Disputed Issues of Fact**

21        Counterdefendants attempt to overcome Counterclaimants' well-pleaded

22   allegations by improperly introducing more than 600 pages of documentary

23   "evidence."  Based on this voluminous evidentiary submission, Counterdefendants

24   ask the Court to make factual findings and resolve the factual issue of likelihood of

25   confusion.  This is improper.

26        It is clear that motions to dismiss are to be evaluated only with reference to

27   matters contained in the pleadings.  *E.g.*, *Arpin v. Santa Clara Valley Transp. Agency*,

28   261 F3d 912, 925 (9th Cir. 2001) ("While evidence outside the complaint [may be

1   relevant], such extraneous evidence should not be considered in ruling on a motion to

2   dismiss."). "While the rules allow a court to take judicial notice at any stage of the

3   proceedings, . . . it should be done sparingly at the pleadings stage." *Victaulic Co. v.*

4   *Tieman*, 499 F.3d at 236.

5          It is axiomatic that factual issues are not properly resolved at the pleading

6   stage. *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.

7   1992) ("A motion to dismiss . . . does not resolve contests surrounding the facts, the

8   merits of a claim, or the applicability of defenses."). In particular, the evaluation of

9   likelihood of confusion is a fact intensive inquiry, not usually decided at the pleading

10  stage. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 (9th Cir. 1985);

11  *Cardinal Engineering Corporation v. Champion Mfg. Co.*, 300 F.2d 957, 960-61

12  (C.C.P.A. 1962) ( Likelihood of confusion "is a question of fact and not of law. Fact

13  questions should ordinarily not be decided on a motion to dismiss. . . .").

14         In fact, dismissal is appropriate at the pleading stage only if it appears from the

15  pleadings that no confusion is likely as a matter of law. *Murray v. Cable Nat.*

16  *Broadcasting Co.*, 86 F.3d 858, 860 (9th Cir. 1996) (dismissal only appropriate if, as

17  a matter of law, "goods are unrelated and confusion is unlikely"). This is not the case

18  here, where at least some of the parties' goods are *identical*.

19  ### III.   COUNTERCLAIMANTS HAVE ADEQUATELY ALLEGED FACTS

20  ### SUPPORTING LIKELIHOOD OF CONFUSION

21         In determining whether a likelihood of confusion exists, the following eight

22  factors are relevant: (1) strength of the mark; (2) relatedness or proximity of the

23  goods; (3) similarity in appearance, sound, and meaning; (4) evidence of actual

24  confusion; (5) marketing channels used; (6) degree of care likely to be exercised by

25  the consumer; (7) junior users' intent in selecting the mark; and (8) likelihood of

26  expansion of product lines. *AMF v. Sleekcraft Boats*, 599 F.2d 341, 352 (9th Cir.

27  1979).

28

PRINTED ON

RECYCLED PAPER

6666308v1                                    - 4 -

1    Counterdefendants claim that Counterclaimants have failed to plead likelihood

2  of confusion, asserting that Counterclaimants have merely "pasted legal arguments"

3  into their pleading.  This is incorrect.  Counterclaimants have alleged many specific

4  facts from which the Court can reasonably infer that at least six of the eight[2]

5  *Sleekcraft* factors weigh in favor of a likelihood of conclusion.  These include:

6  strength of mark (TAC, ¶ 24); proximity of goods (TAC, ¶ 25); similarity of marks

7  (TAC, ¶ 26); marketing channels (TAC, ¶ 27); type of goods and degree of care

8  (TAC, ¶ 28); likelihood of expansion of product lines (TAC, ¶ 29).

9    It may be, in some cases, that not all factors are of equal importance.  As the

10  Ninth Circuit recently explained:

11         [T]he test for likelihood of confusion is "pliant," and . . .
           "[s]ome factors are much more important than others,...."
12         We have regularly applied all the relevant factors, noting
           that a final likelihood of confusion determination may rest
13         on those factors that are of the most relative importance in
           any particular case. . . .
14
   *Jada Toys Inc. v. Mattel, Inc.*, 518 F.3d 628, 632-33 (9th Cir. 2008).  As the Court
15
   cautioned, however:
16
           In the context of two subjectively dissimilar marks,
17         evidence of actual confusion and evidence defining the
           context in which the goods are sold are particularly
18         relevant.

19         To hold otherwise would allow the possibility that
           persuasive evidence of a particular factor may be
20         considered at the expense of relevant evidence of others.
           *This problem is particularly acute where, as here, a court*
21         *relies on the dissimilarity of the marks to conclude that no*
           *likelihood of confusion exists.*
22
   *Id.*
23

24  ─────────────────
          [2] Counterclaimants have not yet alleged any facts relating to actual confusion
25  or Counterdefendants' intent in selecting the mark.  This is not, as Counterdefendants
    suggest, a nefarious tactic indicative of bad faith pleading.  Motion, 16:25-17:5.
26  Rather, quite simply, as the case is still at the pleading stages, Counterclaimants have
    not yet had an opportunity to conduct discovery regarding Counterdefendants' state of
27  mind or to conduct a likelihood of confusion survey.  The absence of more specific
    allegations relating to these two factors established only that factual issues exist and
28  need to be resolved, and that dismissal is not appropriate at this early stage.

The thrust of all Counterdefendants' arguments is that the parties' marks are facially dissimilar.  As discussed below, in Counterclaimants' opinion, the parties' marks are similar.  At best, however, Counterdefendants' arguments highlight the importance of "*evidence defining the context in which the goods are sold*."  *Id.*  Such evidence is unavailable at this early stage of the case, again underscoring why resolution of the question of likelihood of confusion is not appropriately determined at this time.

Counterclaimants' allegations are more than sufficient to allow this Court to reasonably infer that confusion is likely.  Under *Twombly* and *Iqbal*, this is all that is required to withstand a motion to dismiss.  *Iqbal*, 129 S.Ct. at 1940; *Twombly*, 550 U.S. at 555.

**A.**   **Similarity of the Marks: Marks are Similar In Sight, Sound, and Meaning**

As a threshold matter, Counterclaimants have alleged facts sufficient for the Court to reasonably infer that the parties' marks are similar and that this factor weighs in favor of a likelihood of confusion.  Specifically, Counterclaimants allege that:

> A.   Counterclaimants' mark is CHINESE LAUNDRY® and Counterdefendants' marks is ENGLISH LAUNDRY - both marks share the identical term "LAUNDRY" as their second word.
>
> B.   The parties' marks consist of the identical term "LAUNDRY" preceded by a single-word description of national origin - CHINESE on the one hand and ENGLISH on the other.  For this reason, the marks are similar in sight, sound, and meaning.

TAC, ¶ 26.

As discussed below, Counterdefendants attempt to overcome these well-pleaded allegations by relying on outside "evidence" and unsupportable legal arguments.

1

### 1.   There Is No Rule that Marks Sharing a Common Word Cannot be Found to Be Confusingly Similar

Counterdefendants suggest that there is some rule that marks sharing a single word in common cannot be confusingly similar.  Motion, 7:1-13.  This argument is without merit.

At the outset, it is important to distinguish between "similarity of marks" -  one factor in the *Sleekcraft* analysis - and the ultimate likelihood of confusion determination properly based on multiple factors.  It is error for the Court to reach a decision on the issue of likelihood of confusion based solely on the single *Sleekcraft* factor of similarity of the marks.  *Jada Toys Inc.*, 518 F.3d at 632-34.

In support of their argument Counterdefendants cite *SG Services Inc. v. God's Girls Inc.*, 2007 WL 2315437 (C.D. Cal. May 9, 2007).  In *SG Services Inc.*, the court compared the marks "Suicide Girls" and "God's Girls" - both used with elaborate logos and artwork.  *Id.* at *5.  Under those circumstances, following discovery and on motion for summary judgment, the court found that "the mere fact that both marks contain the word 'girls' does not create a likelihood of confusion."  *SG Services, Inc.*, 2007 WL 2315437 at *5.

This decision does not establish a rule that marks containing a common word can never be consider similar for purposes of a *Sleekcraft* analysis, nor that such marks can never result in confusion, or even that such marks will usually not result in confusion.  The decision stands only for the proposition that, considering all of the specific facts in evidence in that case and after evaluating all the *Sleekcraft* factors, the court determined that no confusion was likely.

Although *SG Services Inc.* sets out the proper test for evaluating likelihood of confusion, "[i]n deciding the question of confusing similarity, each case must stand on its own facts, and prior decisions are not particularly helpful."  *Continente v. Continente*, 378 F.2d 279, 283 n.3 (9th Cir. 1967), *citing Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 160 (9th Cir. 1963).  This is because "too

1   many diverse factual elements enter into determination of likelihood of confusion for

2   a prior case to be absolutely determinative of some later, subtly different, factual

3   situation."  4 McCarthy on Trademarks and Unfair Competition § 23:31 (4th ed.).

4        **2.**       **<u>Counterdefendants' Argument that No Confusion is Likely</u>**

5                      **<u>Because China and England are Easily Distinguished Is</u>**

6                      **<u>Without Merit</u>**

7        Counterdefendants argue that because China and England are easily

8   distinguishable, the parties' marks here cannot be confused.  Motion, 7:14-24.  This

9   argument is without merit.  Counterdefendants correctly acknowledge that when

10  analyzing the similarity of two marks, "the marks must be considered in their entirety

11  and as they appear in the marketplace."  Motion, 8:19-20, *citing Moose Creek, Inc. v.*

12  *Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1226 (C.D. Cal. 2004).

13       Here, there is no evidence before the Court from which it may determine how

14  the parties' marks appear in the marketplace.  Moreover, Counterdefendants' analysis

15  improperly dissects the parties' marks and compares their component parts, rather

16  than comparing the commercial impression made by the entire marks.  *Moose Creek,*

17  *Inc.*, F. Supp. 2d at 1214 (improper to "dissect" marks to examine and compare their

18  component parts).

19       Stated otherwise, Counterdefendants' argument fails because the issue is not

20  whether consumers will confuse China and England; the issue, correctly stated, is

21  whether, when confronted with the parties' marks CHINESE LAUNDRY and

22  ENGLISH LAUNDRY, consumers will be confused into believing that the parties'

23  goods bearing those marks emanate from a single source.  Although they may not

24  believe that China and England are associated or affiliated, when confronted with

25  related goods in the marketplace bearing the marks CHINESE LAUNDRY and

26  ENGLISH LAUNDRY, consumers could easily be led to believe that the goods are

27  related lines from a single company.

28

1
2

**3.**      **There is Insufficient Evidence To Allow this Court to Evaluate Similarity of the Marks *As Used in the Marketplace***

3
4
5
6
7
8
9
10
11
12
13
14
15

In assessing the similarity of mark, the marks should be considered in their entireties and *as they appear in the marketplace*.  *Official Airlines Guides, Inc. v. Goss*, 6 F. 3d 1385, 1392 (9th Cir. 1993).  For this reason, a side by side comparison of conflicting marks is appropriate only if marks appear side by side in the marketplace.  *G. Heileman Brewing Co. v. Independent Brewing Co.*, 191 F. 489, 497 (9th Cir. 1911); *also* 314 F.2d 635, 644  (9th Cir. 1963) (Pope, J., dissenting); Restatement Third, Unfair Competition § 21, comment c (1995) ("A side-by-side comparison of two designations may not be useful if the goods on which they are used do not appear side by side in the market.  Two marks . . . that are distinguishable when viewed side by side may create a likelihood of confusion when consumers must instead rely only on their memories of the marks.").  Further, the law is clear that when evaluating marks, similarities are weighed more heavily than differences.  *E.g.*, *Official Airlines Guides*, 6 F.3d at 1392.

16
17
18
19
20

Counterdefendants direct this Court to more than 600 pages of "evidence," which they claim shows how the marks are being used in the marketplace.  This "evidence" is improper[3] and, in any event, despite its volume, is insufficient to allow the Court to ascertain how the marks are being used in the market place and undertake an appropriate comparison.

21
22

**a.**      **Counterdefendants' Evidentiary Submission is Improper**

23
24
25
26

Motions to dismiss are not, as noted above, the proper place for submitting "evidence" and resolving disputed issues of fact.  Here, Counterdefendants, in

27
28

---

[3] As more fully explained in the Opposition to Request for Judicial Notice submitted concurrently herewith, much of this "evidence" not the proper subject of a Request for Judicial notice and should not be considered by this Court.

essence, are attempting to skip the pleading and discovery stages and move directly to evaluation of evidence.

What Counterdefendants request this Court to do would turn the pleading process on its head.  It is simply not appropriate to take judicial notice of, accept into evidence, review, determine likelihood of confusion, and ultimately dismiss a claim, based the submission of "evidence" unilaterally selected and proffered by the moving party.  *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) ("While the rules allow a court to take judicial notice at any stage of the proceedings, . . . it should be done sparingly at the pleadings stage.").  "Resolving a thorny issue like reasonableness by resorting to a party's unauthenticated marketing material falls far short of the bar."  *Id.*  Similarly, resolving the issue of likelihood of confusion based on Counterdefendants' unilateral selection of "evidence" would "take[] us, as a matter of process, far too far afield from the adversarial context of litigation."  *Id.* at 237.

### b.   Counterdefendants' "Evidence" is Also Legally Insufficient

The Ninth Circuit has made clear that, where the similarity of the marks is an important factor, it is particularly critical for the Court to closely evaluate "*evidence defining the context in which the goods are sold*."  *Jada Toys Inc.*, 518 F.3d at 632-32.

Here, even if the "evidence" proffered by Counterdefendants were properly considered, it is insufficient to allow a proper determination of how the marks are being used in the marketplace.  None of the "evidence" shows the mark being used with a product.  None of the "evidence" shows the mark as displayed and sold in the in stores.

Instead, the "evidence" shows many different iterations of the marks on various labels and tags in isolation.[4]  There is, however, no evidence demonstrating which, if

---

[4] Counterclaimant did not include in its TAC detailed information regarding the manner in which Counterdefendants are using the ENGLISH LAUNDRY mark.  This

1   any, of the proffered versions of Counterdefendants' mark are presently in use.

2   Counterdefendants claim in their papers that they often use the ENGLISH

3   LAUNDRY together with a flag or a crest.  Motion, 9:16-20.  However, there is no

4   evidence substantiating those claims and the "evidence" clearly shows that

5   Counterdefendants use ENGLISH LAUNDRY by itself as well.

6        Even if such "evidence" were properly before this Court (which it is not), it is

7   impossible to tell how or where ENGLISH LAUNDRY appears in the marketplace.

8   Similarly, there is no evidence to show how or where CHINESE LAUNDRY appears

9   in the marketplace.  Prior to discovery and at the pleading stage, the absence of such

10  evidence underscores the prematurity of determining likelihood of confusion at this

11  time.

12      **B.**    **<u>Purchasers Are Not Likely to Exercise a High Degree of Care When</u>**

13              **<u>Purchasing the Parties' Goods</u>**

14       Counterclaimants have alleged facts sufficient to allow this Court to reasonably

15  infer that consumers will not exercise a high degree of care when purchasing the

16  parties' goods and further that this factor weighs in favor of a likelihood of confusion.

17  Specifically, Counterclaimants allege that "[t]he parties' goods are not expensive, and

18  consumers would not exercise a high degree of care when purchasing the parties

19  goods, as evidenced by, among other things, the following:"

20          A.    Most of Counterclaimants' shoes are priced at
    retail between $50 and $150.  Most of Counterclaimants'

21  bags are priced at retail between $40 and $125.

22          B.    On information and belief, Counterdefendants'
    apparel products generally fall into the price range of $60 -

23  $200.

24  TAC, ¶ 28.

25

26  also is not the result of any bad faith pleading tactic.  Without the benefit of
    discovery, Counterclaimants cannot be expected to provide detailed information

27  about all the ways in which Counterdefendants use their mark.  This is precisely why
    "detailed factual allegations" are not required to withstand a motion to dismiss."  *Iqbal*,

28  129 S.Ct. at 1940, *citing Twombly*, 550 U.S. at 555.

1    Counterdefendants dispute these allegations, principally by characterizing the

2    parties' goods as "designer goods."  Counterdefendants argue that, as a rule,

3    purchasers must exercise a high degree of care when purchasing clothes between $15

4    and $60, citing Tenth Circuit decision from 1987 - over 20 years ago.  Motion, 10:17-

5    20; *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F. 2d 1482, 1487 (10th Cir.

6    1987).  This decision did not establish a bright-line rule to be blindly applied in all

7    future cases and it would be clear error to apply the same definition of "inexpensive"

8    today as was applied over twenty years ago.

9        Counterdefendants also claim that the Ninth Circuit has recognized that "a

10   higher degree of care will be utilized when purchasing "designer" clothing products."

11   Motion, 10:21-24.  There are several problems with this argument as well.

12       First, in *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 634 (9th

13   Cir. 2005), the Ninth Circuit does not articulate the view attributed to it by

14   Counterdefendants.  Rather, the Ninth Circuit, very clearly states that "[n]o clear

15   standard exists for analyzing moderately priced goods, such as non-designer

16   clothing."

17       Second, there is no evidence to support Counterdefendants' new

18   characterization of the parties' products as "designer clothing products."  In fact,

19   Counterclaimants submit that Counterdefendants merely adopted that adjective in

20   hopes of obtaining a better result in this Motion.  Here, Counterclaimants have

21   alleged that the parties' goods are relatively inexpensive and that, as a result,

22   Purchasers are not likely to exercise a high degree of care when purchasing the

23   parties' products.  TAC, ¶ 28.  No evidence appears either on the face of the pleading

24   or otherwise to contradict these allegations.  Counterclaimants have alleged sufficient

25   facts to allow the Court to reasonably infer that this factor weighs in favor of a

26   likelihood of confusion.  This is all that is required at the pleading stage.

27

28

**C.      The CHINESE LAUNDRY Mark Is Strong**

Counterclaimants have also alleged facts sufficient to allow this Court to reasonably infer that the CHINESE LAUNDRY mark is strong.  Specifically, Counterclaimants' allege that, *inter alia*:

> A.      Counterclaimants have been continuously using the CHINESE LAUNDRY® mark for more than twenty five years.
>
> B.      Goods bearing the CHINESE LAUNDRY® mark are sold in more than 2800 stores nationwide, including major department stores and Cels own dedicated retail stores.
>
> C.      Counterclaimants advertise and promote their CHINESE LAUNDRY® mark in major magazines, including, *inter alia*, *Lucky* and *Marie Claire*.
>
> D.      Counterclaimant Goldman's federal registration for the CHINESE LAUNDRY® mark is incontestable.
>
> E.      Counterclaimants' CHINESE LAUNDRY® mark is inherently distinctive or has acquired secondary meaning as to the source of all goods advertised, marketed, sold, or used in connection with the mark.

TAC, ¶ 24.  These factual allegations are more than adequate to allow the Court to reasonably infer that Counterclaimants' CHINESE LAUNDRY mark is strong.

Counterdefendants argue that third party usage renders Counterclaimants' mark weak.  However, much of the evidence submitted by Counterdefendants on this point is irrelevant and inadmissible.  Third party *use* of similar trademarks may be relevant to the strength of a mark in an infringement suit.  However, neither trademark search reports, print outs from the Trademark Office website, nor registration certificates constitute evidence of third party *use*.  <u>Scarves by Vera, Inc. v. Todo Imports, Ltd.</u>, 544 F.2d 1167, 1173-74 (2d Cir. 1976) ("the existence of these registrations is not evidence of what happens in the market place or that customers are familiar with their use.").

Print-outs from third party websites are insufficient for the same reason.  Notably, *Moose Creek, Inc.*, relied upon by Counterdefendants for the proposition

that internet material is admissible, was decided in the context of a motion for preliminary injunction.  *Id.* at 1217.  Unlike motions to dismiss, preliminary injunctions are not limited to matters appearing on the face of the pleading.  Thus, the *Moose Creek, Inc.* court did not address the admissibility of internet print-outs on judicial notice or in connection with a motion to dismiss.  *Id.* at 1217.  Further, to prevail on a motion for preliminary injunction, the movant must show that is has a probability of prevailing on the merits.  In order to survive a motion to dismiss, on the other hand, claimants need only show their claim is "plausible."  It follows that while internet materials may be sufficient to show that a party is unlikely to prevail on the merits, it does not follow that the same materials are properly evaluated and relied on in granting a motion to dismiss.

The issue is whether the alleged other marks were "used by third parties, that they were well promoted, or that they were recognized by consumers."  *Id.*  Here, there is no evidence of whether consumers are familiar with these alleged third party usages.  This is properly an issue for discovery.

### D.   Counterclaimants Have Adequately Alleged Related and Proximate Goods

Counterclaimants' have alleged specific facts from which the Court may reasonably infer that the parties' goods are closely related.  Counterclaimants have specifically identified in their allegations specific goods that each party produces.  TAC, ¶¶ 11, 16-19.  Counterclaimants also specifically identify the identical goods sold by both parties.  TAC, ¶ 25.  Counterclaimants also allege that the parties' non-identical goods are complementary, *i.e.*, of the type normally be sold by a single source.  TAC, ¶ 25(b).  Finally, Counterclaimants alleged that the parties' goods are sold in the same stores and through the same websites.  TAC, ¶ 25(c)-(e).

In an attempt to avoid these specific factual allegations, Counterdefendants claim that there are "contradictions" between the Second Amended Complaint and the TAC.  Specifically, Counterdefendants assert that Counterclaimants' use of the words

"*inter alia*" - suggesting that their products are not limited to women's products - somehow shows bad faith.  This minor change was made, however, because it came to counsel's attention that Counterclaimants sell both *men's and women's* belts.  Accordingly, the change was made for the purpose of accuracy.  With or without the inclusion of the words "*inter alia*," the remaining factual allegations are more than sufficient.

What is important is that that some of the goods sold by the parties are *identical* and that the parties sell their goods in some of the *exact same stores* and through the *exact same websites*.  TAC, ¶¶ 25(a), 25(c)-(e).  All of these factual allegations allow the Court to reasonably infer that the parties' goods are related.

**E.   <u>Counterclaimants Adequately Allege Similarity of Marketing Channels</u>**

In addition to alleging that the parties goods are available for sale in the *exact same stores* and through the *exact same websites*, TAC, ¶¶ 25(c)-(e), Counterclaimants have also alleged that both parties' goods were featured in the *same magazines*.  TAC, ¶ 27(b).  These allegations are more than sufficient to allow the Court to reasonably infer that the parties' products move in the same marketing channels and are marketed to similar consumers.

Counterdefendants argue these allegations too are insufficient, suggesting that Counterclaimants were required to provide evidence to support their allegations.  Motion, 16:5-20.  However, the failure to produce evidence is not a ground for dismissal under Rule 12(b)(6).  *Schmidt*, 310 Fed. Appx. 110.  Prior to discovery, there is no way for Counterclaimants to know the proportion of sales Counterdefendants make through the internet.  Nor would Counterclaimants have available to them without discovery a representative sample of Counterdefendants' advertisements.

**F.     Counterclaimants Have Alleged Facts Allowing Court to Infer that Defendants' Conduct was Willful**

Counterclaimants have not yet alleged facts demonstrating Counterdefendants' intent in selecting their mark because Counterclaimants have not yet had an opportunity to conduct discovery regarding Counterdefendants' state of mind.

Counterclaimants' have alleged, however, facts suggesting that Counterdefendants' conduct was willful, namely, that within approximately one month of receiving Counterclaimants' letter informing of them of Counterclaimants' rights in the CHINESE LAUNDRY mark, Counterdefendants filed at least five new applications to register ENGLISH LAUNDRY or another mark including ENGLISH LAUNDRY.  TAC, ¶ 31.

This is clearly sufficient for purposes of this Motion.

**G.     Counterclaimants Have Alleged Facts Showing Expansion of Product Lines Weighs in Favor of Likelihood of Confusion**

Notably, Counterdefendants have not, even amongst its 600 pages of "evidence," come up with any reason why this factor does not weigh favor of a finding of likelihood of confusion.  Counterclaimants have alleged that "both parties are likely to expand their product lines bringing them in even closer competition with each other."  TAC, ¶ 29.  This is evidenced by, among other things, the following:

> A.     Counterclaimants are in the process of expanding their line of denim and apparel products.
>
> B.     Counterdefendants have submitted various declarations to the Trademark Office swearing that they intend to offer shoes under their ENGLISH LAUNDRY mark.  This will bring Counterdefendants into direct competition with Counterclaimants', whose main product has always been shoes.

TAC, ¶ 29.

These factual allegations are adequate to allow the Court to reasonably infer that this factor weighs in favor of likelihood of confusion.

PRINTED ON
RECYCLED PAPER

6666308v1

## IV. COUNTERCLAIMANTS HAVE ADEQUATELY ALLEGED SECONDARY MEANING

Counterdefendants also claim that Counterclaimants have failed to sufficiently allege secondary meaning. Motion, at 12:19-13:22. This argument too is without merit.

Counterclaimant Goldman's U.S. Trademark Reg. No. 1,861,027, issued on November 1, 1994, is incontestable. ¶¶ 10, 24(d). An incontestable federal trademark registration "is conclusive evidence that the mark is non-descriptive or has acquired secondary meaning, and there is no need to require a showing of secondary meaning of the mark." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061, 1071 (9th Cir. 2003).

Counterclaimants have also alleged that "[b]y virtue of the widespread and longstanding distribution of footwear, apparel, and accessories under the CHINESE LAUNDRY® mark since 1983, the CHINESE LAUNDRY® mark has come to identify the source of such goods and to distinguish those goods from those of others."

Based on these factual allegations, Counterclaimants have adequately alleged secondary meaning.

## V. NONE OF COUNTERCLAIMANTS' CLAIMS SHOULD BE DISMISSED: COUNTERCLAIMANTS HAVE ADEQUATELY ALLEGED LIKELIHOOD OF CONFUSION AND SECONDARY MEANING

Counterdefendants address each counterclaim separately and, with respect to each, argue that dismissal is appropriate solely because confusion between the marks is unlikely. Stated otherwise, according to Counterdefendants, the proposed grounds for dismissal are identical for each counterclaim. Thus, for the reasons discussed above, Counterclaimants have adequately alleged likelihood of confusion and

1 secondary meaning as required to support each of their First through Sixth

2 Counterclaims.  *See* Sections III & IV, above.

3      Thus, Counterdefendants' Motion should be denied with respect to

4 Counterclaimants' First through Sixth counterclaims.

5 **VI.**   **CONCLUSION**

6      For all the foregoing reasons, Counterdefendants' Motion should be denied in

7 its entirety.  If, however, the Court is inclined to grant Counterdefendants' Motion, in

8 part or in whole, Counterclaimants respectfully request leave to amend to cure any

9 defects identified by the Court.

10

11 DATED:  December 21, 2009

12                        JEFFER, MANGELS, BUTLER & MARMARO LLP
ROD S. BERMAN

13                        SUSAN ALLISON
JESSICA C. BROMALL

14                        By: */S/     JESSICA C. BROMALL*

15                              JESSICA C. BROMALL
Attorneys for Defendants and

16                        Counterclaimants CELS ENTERPRISES,
INC. and ROBERT GOLDMAN

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

6666308v1                     - 18 -