JEFFER MANGELS BUTLER & MITCHELL LLP
ROD S. BERMAN (Bar No. 105444)
*rberman@jmbm.com*
SUSAN ALLISON (Bar No. 133448)
*sallison@jmbm.com*
JESSICA C. BROMALL (Bar No. 235017)
*jbromall@jmbm.com*
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone:   (310) 203-8080
Facsimile:    (310) 203-0567

Attorneys for Defendants and Counterclaimants:
CELS ENTERPRISES, INC. and ROBERT GOLDMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCK AND ROLL RELIGION, INC., a California corporation,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>CELS ENTERPRISES, INC. a New York corporation; ROBERT GOLDMAN, an individual<br><br>    Defendants/Counterclaimants | CASE NO.   CV09-5258 R (PLAx)<br><br>**REPLY IN SUPPORT OF CELS ENTERPRISES, INC. AND ROBERT GOLDMAN'S NOTICE OF MOTION AND MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION AND PRODUCTION OF DOCUMENTS; REQUEST FOR REASONABLE ATTORNEY'S FEES** |
| CELS ENTERPRISES, INC., a New York corporation; ROBERT GOLDMAN, an individual,<br><br>    Counterclaimants,<br><br>v.<br><br>ROCK AND ROLL RELIGION, INC., a California corporation; DEFIANCE USA, Inc., a California corporation; and DOES 1 through 10 inclusive,<br><br>    Counterdefendants. | Date:                       December 17, 2012<br>Time:                       11:00 a.m.<br>Judge:                      Hon. Manuel L. Real<br>Courtroom:               No. 8<br>Discovery Cutoff:  February 4, 2012<br>Pretrial Conf.:         February 4, 2012<br>Trial Date:               February 12, 2012 |

PRINTED ON
RECYCLED PAPER

LA 9149224v1

## I. INTRODUCTION

Counter-defendants do not dispute that Counterclaimants fulfilled their meet and confer obligations under the local rules. Yet Counter-defendants fail to provide any explanation for their wholesale failure to participate in joint stipulation process. Counter-defendants claim that the motion was "unnecessary" and Counterclaimants "only devoted a minimal amount of effort to meeting and conferring." Neither of these two statements is remotely accurate.

Several of the categories of documents sought via this motion have been the subject of meet and confer efforts since before this case went up on appeal. Counter-claimants have written no less than three detailed letters identifying the documents they believe remain outstanding, each of which requested a conference of counsel pursuant to the Local Rules.[1] Counterclaimants have also written several detailed emails addressing the matters presently before the Court, each of which also requested a conference of counsel pursuant to the Local Rules.[2] The most recent such email was sent on October 15, 2012. *Id.* Counsel for Counter-defendants simply did not respond. At that time, trial was set for December 11, 2012, and there was not time to engage in the joint stipulation process prior to trial. Shortly after the trial was moved until February 2013, Counterclaimants initiated the joint stipulation process. This too was ignored by Counter-defendants.

The documents sought are central to the issues before the Court. For example, Counterclaimants seek documents relating to Counter-defendants' shoe license. Virtually none have been produced. Counterclaimants also seek documents showing licensing revenues received by Counter-defendants from their various licensees, and sales revenues earned by Counter-defendants. While they have produced a single page spread sheet purporting to show total licensing revenues received, Counter-

---

[1] *See* Declaration of Jessica C. Bromall, filed with Counterclaimants' Motion ("Bromall Decl."), Exhs. 9-11.
[2] *Id.* at Exh. 12.

PRINTED ON
RECYCLED PAPER

LA 9149224v1

- 1 -

defendants have produced no back-up.  It is not the case, as Counter-defendants suggest, that Counterclaimants are required to show that the documents requested contained "new information."  Counter-defendants are not relieved of their obligation to produce responsive documents simply because they have produced some document they allege contains the same or similar information as is contained in the requested documents.

If Counter-defendants wanted to avoid this Motion, they could have simply: (1) produced the requested documents; or (2) responded by providing some credible explanation as to why they cannot, or should not be required to, produce the requested documents.  Also, although requested earlier, many documents were produced after Counter-defendants' representatives were already deposed.[3]  Thus, Counterclaimants have had no opportunity to ask Counter-defendants to identify the various documents or explain what they contain.  If Counter-defendants believe that production of these later produced documents (or any other documents) satisfy their discovery obligations, they could simply have identified the documents by Bates number (as Counterclaimants requested), and explained why they satisfy their discovery obligations.

Counter-defendants, however, have done none of these things.  They have not met and conferred in good faith.  They have not participated in the joint stipulation process.  Indeed, even in response to this Motion, Counter-defendants fail to provide any information about what they have done to search for documents and what documents they have *actually produced.*  They say only that they have (or will) produce responsive documents in their custody, possessions or control, "to the extent that they exist" or to the extent "located through a reasonable search."  Although Counter-defendants repeatedly claim that locating and producing the responsive

---

[3] *See* Supplemental Declaration of Jessica C. Bromall, filed with Counterclaimants Motion ("Supp. Bromall Decl."), ¶ 2.

documents would be burdensome and time consuming, they provide *no information* about the actual process that has been undertaken to locate responsive document or that would need to be undertaken to do so.

Counter-defendants have not complied with their discovery obligations. The Court should grant Counterclaimants' Motion and order production of the requested documents and award Counterclaimants their attorney's fees incurred in connection with this Motion.

## II. REQUEST FOR PRODUCTION NOS. 2-4, 14, 17-19, 23 AND 92-97

The above requests seek documents that would show what products Counter-defendants actually licensed and sold under the ENGLISH LAUNDRY mark and what revenues they derived from those sales or licenses. During the meet and confer Counterclaimants repeatedly identified specific responsive documents that have not been produced. These documents are relevant both to the issue of likelihood of confusion and to the determination of the appropriate amount of damages.

### A. Documents Relating to Shoes

It is undisputed that Counter-defendants licensed a third party to sell ENGLISH LAUNDRY shoes. It is undisputed that the third party produced a line of shoes and sold them. Mr. Wicks testified that he personally approves all licensed products prior to production. Yet, to date, no representative samples of shoes have ever been produced (Req. No. 23). No documents have ever been produced that identify what styles of shoes were sold (Req. Nos. 2-4, 23). No documents have ever been produced showing how many shoes were sold or the volume of sales or royalties from shoes (Req. Nos. 17-19). No communications between Counter-defendants and the shoe licensee, the agent that brokered the deal with the shoe licensee, or any representative of any party involved in any way in the shoe license transaction, have ever been produced (Req. Nos. 93-97).

The only explanation offered for the failure to produce these documents is that: (1) Mr. Wicks likes to conduct business on the telephone; and (2) there are no

documents other than the license agreement because the shoe license was only for a limited term and resulted in only the minimum royalty payment. Regardless of how short lived the license was, and regardless of how much business Mr. Wicks conducts on the phone, there must be *some* responsive documents. Even if the license resulted in only the minimum royalty payment, there should be some document reflecting that. If no payment was made and the agreement breached, there should be some document reflecting that. Per Mr. Wicks own testimony, he personally reviews and approves all licensed products, thus there should be lines sheets, samples, or *something* reflecting the request for approval. There should be something showing the styles of shoes ultimately sold under the license.

The license agreement was dated February 2010. This lawsuit was initiated in 2008. Necessarily, any documents generated in connection with the negotiation or administration of the shoe license must have been created during the pendency of this lawsuit, and Counter-defendants had an obligation to preserve and maintain those documents. Counterdefendants have not established by any credible evidence or explanation that there are no responsive documents other than the agreement itself. These documents should be located and produced. If they cannot be located, absent some explanation, Counter-defendants should be sanctioned for their failure to preserve these responsive documents.

B. **Revenue Documents: Cash Receipts, Royalty Reports, General Ledger**

Documents reflecting the amount of product sold and licensed, the dollar volume of those sales, and the types of products sold or licensed, are relevant to issues of likelihood of confusion, as well as damages.

Counter-defendants have produced a one page spread-sheet purportedly showing RRR's total licensing revenue, without breaking that revenue down by

licensee or product.[4]  Supp. Bromall Decl., ¶ 3.  There is no back for this spreadsheet.  *Id.*  Counter-defendants have also produced what appear to be royalty reports and a hodge-podge of checks and wire transfer receipts for some licensees for the years 2010 and 2011, many of which are barely legible.[5]  *Id.*  Additionally, Counter-defendants have produced sales journals, shipping logs, and, after this motion was filed, credit memo journals for the relevant years.  *Id.*  Counter-defendants have provided no explanation of why production of the requested documents would be duplicative of the previously produced documents, nor do Counterclaimants understand that the previously produced documents provide back-up for the spreadsheet that purports to summarize licensee sales.  *Id.*

The cash receipts documents Ms. Fernando testified about are responsive to at least Request Nos. 17-19 and 92-97 and, according to Ms. Fernando, would show, *inter alia*, monies received from licensees (including the footwear licensee).  To date, no such documents have been produced.  *Id.* at ¶ 4.

The royalty reports and other correspondence with licensees should reflect royalties paid to Counter-defendants.  Counter-defendant RRR identifies itself as a licensing company, yet claims that it would be burdensome for it to locate and produce documents that would show the royalties it received from its various licensees.  To date, only documents for 2010 and 2011 have been produced.  *Id.* at ¶ 5.

Counter-defendant RRR's single largest licensee was Counter-defendant Defiance.  While they have produced some copies of wire transfer receipts, Counter-defendants have not produced any documents that show the amount of royalties owed or paid by Defiance to RRR.  Ms. Fernando testified at her deposition that a portion

---

[4] That spreadsheet is RRR13092, the document referred to in paragraphs 14 and 16 of the Declaration of Olivier A. Taillieu.
[5] As these were produced after the depositions of Counter-defendants representatives, it is not completely clear what they are.

of the "general ledger" entitled "Due to/from Officer" would reflect all monies due to R&R from Defiance as royalty payments. These documents are responsive and should be produced.

With respect to Request Nos. 94-97, Counter-defendants now set forth a variety of objections, including, vagueness and overbreadth, none of which objections were raised at any point prior to service of Counter-defendants' Opposition. Thus, any such objections have been waived. Even if they have not, Counterclaimants have identified specific documents, all of which have been testified about by Counter-defendants' witnesses. The Court should order Counter-defendants to produce the requested documents.

### C. Style Guides

Mr. Wicks testified that he prepared and sent to licensees style guides and brand guides. These documents are responsive to, at least, Request Nos. 92-97. Notwithstanding Counter-defendants' statement that style guides would be produced, to date, no style guides or brand guides have been produced by Counter-defendants.

After considerable time and expense, Counterclaimants obtained copies of several style guides from third parties Bluestar Alliance and EL Acquisition, which Counterclaimants understand were provided to Bluestar Alliance and EL Acquisition by Counter-defendants in connection with their acquisition of the ENGLISH LAUNDRY brand. Supp. Bromall Decl., ¶ 6.

It is unclear whether these style guides are the same one Mr. Wicks testified about. It is unknown whether additional brand guides exist. It is also unclear why Counter-defendants have failed and refused to produce these documents making it necessary for Counter-defendants to go through the costly process of obtaining from a third party.

Notably, given Counter-defendants' claim that it has not documents reflecting sales or licensing of shoes, the few guides Counterclaimants obtained affirmatively

PRINTED ON RECYCLED PAPER

LA 9149224v1

- 6 -

represent that ENGLISH LAUNDRY is used for shoes, and picture what appear to be ENGLISH LAUNDRY brand shoes. Supp. Bromall Decl., ¶ 6.

### III. REQUEST FOR PRODUCTION NOS. 15-16 AND 36-38

The foregoing requests seek documents relating to the ownership of the ENGLISH LAUNDRY brand, and any transfers of ownership of the ENGLISH LAUNDRY brand. The requested documents are particularly relevant given the March 2011 sale of the ENGLISH LAUNDRY to Bluestar Alliance and EL Acquisition, which occurred during the pendency of this lawsuit.

With respect to Request Nos. 15-16, 36-38, Counter-defendants set forth a variety of objections, including, vagueness and overbreadth, many of which objections were not raised at any point prior to service of Counter-defendants' Opposition. Thus, any such objections have been waived.

In any event, to the extent any of the requests are overbroad or vague, Counter-claimants have identified specific responsive documents that they are seeking, namely, communications between Counter-defendants and third-parties relating to the sale of the ENGLISH LAUNDRY brand to EL Acquisition and Bluestar Alliance.

Counter-defendants' position, that the only relevant document regarding the sale of the ENGLISH LAUNDRY brand is the final asset purchase agreement is unsupportable. The requested documents are relevant to various issues before the Court, including ownership of the mark, likelihood of confusion, and the products sold and licensed by Counter-defendants and the revenues derived therefrom. That Bluestar and EL Acquisition are not parties to this lawsuit does not render communications regarding the transaction irrelevant and they should be produced.

### IV. REQUEST FOR PRODUCTION NOS. 48, 64, AND 71

Since 2010, Counter-Defendants have been pointing to emails from certain "Dillard's representatives" as evidencing a lack of confusion. In October 2012, these emails were finally produced. In her deposition, however, Counter-defendant employee Lena Hermansson testified that these emails were sent to her by Dillard's

PRINTED ON RECYCLED PAPER

LA 9149224v1

- 7 -

representatives **in response to emails she sent them**. She further testified that she provided counsel with both her emails to the Dillard's representatives and the Dillard's representatives' responses. However, only the Dillard's representatives' responsive emails were ever produced. Counter-defendants have never produced copies of the emails Ms. Hermansson sent to the Dillard's representatives that prompted the representatives to send their responses, which responses Counter-defendants contend evidence an absence of confusion.

Either Ms. Hermansson's emails must be produced, or the Dillard's emails must be excluded at trial. To do otherwise would be akin to allowing the jury to hear an answer, without ever hearing the question. This, of course, is not allowed because hearing information without context is likely to bias, confuse, or mislead the jury.

## V. REQUEST FOR PRODUCTION NOS. 20-21

These foregoing requests seek copies of Counter-defendants' advertising and documents reflecting Counter-defendants' advertising expenditures. Throughout the meet and confer process, and in their Motion, Counterclaimants identify numerous documents that have not been produced, including documents that would show Counter-defendants' advertising expenditures. Counter-defendants respond only by indicating that they have already produced "representative copies" of advertisements, and arguing that they should not be required to produce copies of any other advertisements.

First, there is no reason that Counter-defendants should not produce copies of all of their advertising materials (rather than just "representative copies"). These documents are relevant to the issue of likelihood of confusion and there is no indication that undertaking a production of such documents would be overly broad or unduly burdensome.

Second, there is no justification for Counter-defendants' failure to produce the other requested documents, namely: (1) Documents relating to ENGLISH LAUNDRY trade publication advertising; (2) Documents relating to co-op

advertising of ENGLISH LAUNDRY products; (3) Documents relating to product placement advertisements of ENGLISH LAUNDRY products; (4) Documents relating to paid advertisements for ENGLISH LAUNDRY products; and (5) Advertising expenditures for R&R's ENGLISH LAUNDRY products.

These documents should be produced.

## VI. REQUEST FOR REASONABLE ATTORNEY'S FEES

Counter-defendants provide no explanation for their failure to participate in the joint stipulation process and no explanation for their failure and refusal to produce the requested documents. Thus, an award of Counterclaimants' reasonable attorney's fees incurred in bringing this motion. To date, Counterclaimants have incurred at least $9000 in connection with this Motion, and anticipate that they will incur additional fees in connection with appearing at the hearing on this motion. *See* Supp. Bromall Decl., ¶ 7. Accordingly, an award of attorney's fees in the amount of at least $9000 is appropriate.

## VII. CONCLUSION

Counterdefendants have failed to produce numerous integral categories of documents responsive to Counterclaimants Requests despite that these documents were the subject of numerous meet and confer letters. Accordingly, the Court should compel Counterdefendants to produce all of the following categories of documents:

1. ENGLISH LAUNDRY cash receipts demonstrating all revenue received by R&R attributable to ENGLISH LAUNDRY products;

2. R&R and Defiance royalty reports, royalty payments and gross sales information;

3. "Due to/from Officer" ledger reflecting monies due to R&R from Defiance as royalty payments;

4. Documents relating to ENGLISH LAUNDRY branded shoes, including sales information, information identifying the specific shoes sold, sample footwear products, and communications with licensees;

5. ENGLISH LAUNDRY style guides;

6. ENGLISH LAUNDRY trademark transfer documentation;

7. Communications relating to EL Acquisition's and Bluestar's acquisition of the ENGLISH LAUNDRY brand;

8. Lena Hermansson's emails to certain "Dillard's representatives"; and

9. Advertising documents relating to ENGLISH LAUNDRY.

Counter-defendants should be compelled to produce the requested documents.

DATED: December 3, 2012      JEFFER MANGELS BUTLER & MITCHELL LLP
                              ROD S. BERMAN
                              SUSAN ALLISON
                              JESSICA C. BROMALL

By: /s/JESSICA C. BROMALL
        JESSICA C. BROMALL
Attorneys for Defendants and Counterclaimants
CELS ENTERPRISES, INC. and ROBERT GOLDMAN

## **DECLARATION OF JESSICA C. BROMALL**

I, JESSICA C. BROMALL, declare as follows:

1. I am an attorney duly licensed to practice law in the state of California and before this Court. I am an associate with the law firm of Jeffer Mangels Butler & Mitchell LLP, counsel for Defendants and Counterclaimants Cels Enterprises, Inc. and Robert Goldman ("Counterclaimants"). I have personal knowledge of the facts set forth herein, or knowledge based on the documents in my firm's files in this matter, and, if called as a witness, could and would competently testify thereto. I submit this Declaration in support of Counterclaimants Motion to Compel Responses to Requests for Production.

2. Although requested earlier, many documents were produced after Counter-defendants' representatives were already deposed. Thus, Counterclaimants have had no opportunity to ask Counter-defendants to identify the various documents or explain what they contain.

3. Counter-defendants have produced a one page spread-sheet purportedly showing RRR's total licensing revenue, without breaking that revenue down by licensee or product. There is no back for this spreadsheet. Counter-defendants have also produced what appear to be royalty reports and a hodge-podge of checks and wire transfer receipts for some licensees for the years 2010 and 2011, many of which are barely legible. Additionally, Counter-defendants have produced sales journals, shipping logs, and, after this motion was filed, credit memo journals for the relevant years. Counter-defendants have provided no explanation of why production of the requested documents would be duplicative of the previously produced documents, nor do Counterclaimants understand that the previously produced documents provide back-up for the spreadsheet that purports to summarize licensee sales.

4. The cash receipts documents Ms. Fernando testified have not been produced.

5. Royalty reports have only been produced for 2010 and 2011.

LA 9149224v1

- 11 -

6. Counterclaimants have sought third party discovery from Bluestar Alliance and EL Acquisition. After this motion was filed, Bluestar Alliance and EL Acquisition produced responsive documents, including copies of at least two different brand or style guides. At least one features shoes and identifies shoes as a licensed product.

7. My hourly rate is $435, which is in the range of comparable attorneys with my experience and background in Los Angeles, California where I have my practice. The hourly rate of Susan Allison, a partner at Jeffer Mangels Butler & Micthell LLP is $650, which is in the range of comparable attorneys with her experience and background in Los Angeles, California where she has her practice. To date, Counterclaimants have incurred approximately $9000 in connection with the preparation of this motion and reply brief. I anticipate that Counterclaimants will incur additional fees in connection with appearing at the hearing on this motion. Information regarding the hours and fees incurred in connection with the foregoing will be provided by way of a supplemental declaration.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that this Declaration is executed on December 3, 2012 at Los Angeles, California.

/s/ JESSICA C. BROMALL
JESSICA C. BROMALL

LA 9149224v1

- 12 -